UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-303-GWU

FLORETTA M. LANHAM-MCKINNEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Floretta Lanham-McKinney brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

    impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lanham-McKinney, a 54-year-old former janitor with a high school education, suffered from impairments related to degenerative disc disease of the lumbar spine with chronic low back pain, osteoarthritis of the left hand, and an affective disorder. (Tr. 57, 62). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 59, 61). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 62-63). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 63).

Lanham-McKinney argues that the ALJ erred in failing to find that she was disabled based upon application of Rule 201.12 of the Medical-Vocational Guidelines. In the alternative, the plaintiff seeks a remand of the action for further consideration. After review of the evidence presented, the undersigned agrees that the administrative decision is not supported by substantial evidence. However, the current record also does not mandate an immediate award of Social Security benefits. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert Sally Moore included an exertional restriction to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to more than occasionally stoop, kneel, crouch, crawl or climb ramps and stairs; (2) an inability to ever climb ladders or ropes; (3) an inability to more than occasionally handle with the non-dominant left hand;[1] (4) a need to avoid concentrated exposure to full body vibration; and (5) a limitation to performing simple, repetitive tasks in a low stress work environment without excessive productivity demands. (Tr. 42). In response, the witness identified a significant number of jobs in the national economy which could still be

---

[1] "Handling" was defined by the ALJ as "seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands." (Tr. 42).

performed. (Tr. 42-43). The ALJ relied upon this information to show that other jobs existed which Lanham-McKinney could perform. (Tr. 62).

The ALJ did not properly evaluate the evidence concerning Lanham-McKinney's physical condition. A well settled principle of Social Security law provides that the opinions of treating sources are generally given greater weight than the opinions of non-examining sources. Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992); 20 C.F.R. § 404.1527(d)(1). If the opinion of a treating source is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other evidence, it is entitled to controlling weight, but even when it is not given controlling weight, the ALJ must consider a list of factors including the length of the treating relationship, frequency of examination, the nature and extent of the treating relationship, the amount of relevant evidence provided by the medical source, and the consistency of the medical source's opinion with the record as a whole, and whether the medical source is a specialist. Cohen, 964 F.2d at 528.

Dr. Patrick Daniel, a treating source, completed Residual Functional Capacity Assessment forms in November of 2007 and September of 2008. (Tr. 300-302, 329-332). Dr. Daniel restricted the plaintiff to sedentary level work further limited by an inability to sit, stand or walk for less than two hours a day, the need to shift position at will, and significant limitations concerning repetitive reaching. (Tr. 300-301, 330-331). These restrictions are more severe than those found by the ALJ.

If fully binding on the administration, than the claimant would be considered totally disabled based upon application of Rule 201.12 given her, age, education, and work background. The doctor related his restrictions to degenerative disc disease, fibromyalgia and diabetes. (Tr. 329).

The ALJ rejected the opinion of Dr. Daniel because the physician considered Lanham-McKinney to be disabled. (Tr. 61). Such an opinion would be an issue reserved to the Commissioner and would not be binding on the administration under the Federal regulations at 20 C.F.R. § 404.1527(e). However, as noted by the plaintiff, while the doctor's physical limitations might result in her being disabled, the physician did not specifically state that this would be the case. The ALJ also indicated that the doctor's opinion was not well-supported by objective clinical data. (Id.). Therefore, the main issue in the action concerns whether the doctor's specific physical limitations were supported by objective medical data.

The specific physical limitations noted by Dr. Daniel, such as the lifting restriction to 10 pounds, were not addressed by the ALJ. Furthermore, the medical record reveals at least some objective medical evidence in support of the doctor's opinion. In August of 2007, records from Richmond Open MRI, obtained at the request of Dr. Daniel, revealed osteoarthritis at multiple sites and calcification within the ligaments on the left hand and osteoarthritis on the right. (Tr. 305-306). Lanham-McKinney had calcification of the anterior longitudinal ligament at C4-C5 and C5-C6 with cervical spasm. (Tr. 303). Degenerative disc disease and

degenerative spondylolisthesis was noted on the lumbar spine.  (Tr. 304).  Dr. Daniel thought these results were consistent with her clinical findings.  (Tr. 318).  The physician also reported decreased shoulder abduction on the right during physical examination.  (Tr. 321).   Therefore, at least some objective medical data supports the doctor's opinion.

The only other physician of record to examine Lanham-McKinney was Dr. Barry Burchett.  (Tr. 234-241).  The plaintiff reported symptoms of irritable bowel syndrome with alternating diarrhea and constipation and urinary frequency as well as a history of diabetes and hypertension.  (Tr. 236-237).  The claimant ambulated with a normal gait.  (Tr. 237).  Only one of 18 fibromyalgia trigger points was noted to be tender.  (Id.).  No sign of hypertensive or diabetic retinopathy was reported.  (Id.).  Examination of the hands revealed Heberden's nodes which were minimally tender.  (Tr. 238).  Straight leg raising was negative both sitting and supine.  (Id.).  Dr. Burchett did report a diagnostic impression of chronic lumbar pain, insulin dependent diabetes, fibromyalgia by history, irritable bowel syndrome, hypertension, and osteoarthritis of the hands.  (Id.).

Dr. Burchett's physical examination results were generally less severe than those indicated by the treating source Dr. Daniel.  For example, he noted only one out of 18 fibromyalgia trigger points as tender in contrast to the treating source who found multiple tender trigger points.  (Tr. 239, 298).   However, the consultive examiner did not have access to the laboratory results from Richmond Open MRI

which were obtained by Dr. Daniel after Dr. Burchett's April, 2007 examination. The doctor also did not address the issue of specific physical restrictions. Thus, the consultative examiner's report, while perhaps giving one some reasons to suspect that the treating physician's restrictions were somewhat excessive and, so, not fully binding, is not conclusive enough to support a finding that Dr. Daniel would be entitled to no weight.

Dr. Amanda Lange reviewed the record in of August of 2007 and affirmed an April, 2007 finding by medical reviewer, who was not an "acceptable medical source" under 20 C.F.R. § 404.1513(a), indicating that Lanham-McKinney did not suffer from a "severe" impairment. (Tr. 242, 292). The ALJ relied heavily upon this opinion. (Tr. 61).

Dr. Lange reviewed the record on August 10, 2007 and, so, did not have the opportunity to see and comment upon the Richmond Open MRI testing results obtained on August 22, 2007 or the November, 2007 and September, 2008 assessments from Dr. Daniel. An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Social Security Ruling (SSR) 96-6p suggests that when the examining source is also a treating physician then the non-examiner should have seen a _complete_ record including the opinion of a specialist in the claimant's area of impairment who had access to more detailed and comprehensive information than the treating source.

The ALJ should at least have sought the advice of a medical advisor who had reviewed the entire record before rejecting the opinion of Dr. Daniel.  Therefore, a remand of the action for further consideration is required.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. A separate judgment and order will be issued simultaneously consistent with this opinion.

This the 30th day of August, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**